## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID WHEATLEY, TIMOTHY O'SHEA, and WILLIAM MCDONALD, <br><br> Defendants. | Civil Action No. <br> 3:21 - CV - 1380 (CSH) <br><br><br> NOVEMBER 2, 2021 |

### MEMORANDUM AND ORDER RE:  PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY [Doc. 11]

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

Plaintiff Teachers Insurance and Annuity Association of America ("TIAA")  brings this action against defendants David Wheatley, Timothy O'Shea, and William McDonald, former "Wealth Management Advisors" for TIAA, for breach of contract, breach of the duty of loyalty, and unfair competition under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* ("CUTPA").

Subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a)(1). TIAA alleges that it is a New York corporation with its principal place of business located in New York. Doc. 1 ("Complaint"), ¶ 1.  The three Defendants are alleged to be Connecticut citizens. *Id.* ¶¶ 2-4. The amount in controversy, relating to TIAA's clients' assets, is allegedly well in excess of $75,000,

1

exclusive of interests and costs. *Id.* ¶ 6.

Wheatley, O'Shea, and McDonald commenced their affiliation with TIAA in 2013, 2007, and 2015, respectively. *Id.* ¶ 8. In addition to payment for Defendants' registrations with various securities exchanges, TIAA provided them with accounts to service, as well as many other benefits, including "access to and familiarity with clients investing over $2 billion in assets with the company." *Id.*

To commence their affiliation with TIAA, each Defendant signed a "Confidentiality and Non-Solicitation Agreement" (the "Agreement"), which contained notice, non-solicitation, confidentiality, and non-disparagement covenants. *Id.*, Ex. A-C. As alleged in the Complaint, the Agreement restricts Defendants in their use of TIAA's confidential and trade secret information, prohibits Defendants from interfering with TIAA's client relationships, and binds Defendants to not engage in defamatory or disparaging comments directed at TIAA. *Id.* ¶¶ 10-12. The Agreement further provides that TIAA is entitled to: (1) "preliminary and permanent injunctive relief upon its breach or threatened breach" and (2) "expedited discovery in aid of a preliminary injunction motion." *Id.* ¶ 14 (citing Ex. A-C, at ¶ 7).

On September 3, 2021, Defendants gave notice of their resignations, *en masse*, from TIAA. *Id.* ¶ 18. Under the Agreement, Defendants remained TIAA employees through and including October 3, 2021. *Id.* ¶ 19. TIAA alleges that even before they gave notice of their resignations, Defendants were actively working against TIAA's interests in anticipation of their move to a competitor. *Id.* ¶¶ 20-24. For example, on August 20, 2021, Wheatley emailed a number of TIAA clients to schedule calls/Zoom meetings to take place between August 25 and September 1, 2021, "ostensibly to 'speak about your accounts' and the 'overall current economic outlook and how that

may impact your portfolio.'" *Id.* ¶ 25.  TIAA alleges it has every reason to believe the purpose of these calls/Zoom meetings was for Wheatley to "set the table" with clients about his pending move to a TIAA competitor. *Id.* ¶ 26.  Similarly, on September 2, 2021, just one day before giving notice, O'Shea emailed a client to request,  "Please call me when you have a minute. I'd like to catch up and have a review." *Id.* ¶ 30.  Furthermore, by email and voicemail, McDonald made a series of attempts to contact clients a few days before his resignation.  *Id.* ¶¶ 34-37.

Plaintiff alleges that on October 4, 2021, Defendants became affiliated with Tidewater Wealth Management ("Tidewater") with offices in New Haven and West Hartford, Connecticut.  *Id.* ¶ 49.  Tidewater offers services which are competitive to those of TIAA.  *Id.* Goss Advisors was allegedly the "entity providing compliance, business, and other support" to Tidewater.  Doc.  11-1 ("Plaintiff's Memorandum in Support"), at ¶ 2.  Defendants have provided no adequate assurances that they will not solicit TIAA's clients.  Doc. 1, at ¶ 50.

TIAA alleges that on October 12, 2021, one of its clients advised that he received a call from O'Shea asking that he move funds from TIAA to Tidewater. *Id.* ¶ 51.  Accordingly, "[b]ased on Defendants' conduct to date," they "have solicited and/or intend to solicit TIAA clients to transfer to Tidewater, and [to] violate their other obligations including not to disparage TIAA." *Id.* ¶ 52.

Plaintiff now moves, pursuant to Federal Rule 26 of Civil Procedure, for expedited discovery to support its contemporaneous motion for preliminary injunction.[1]  Doc. 11, 12.  In that motion for

---

[1]  Pursuant to Rule 26, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or *by court order*."  Fed. R. Civ. P. 26(d)(1) (emphasis added).  The case commenced on October 18, 2021, and Defendants' counsel appeared on October 25, 2021, so the parties have not yet conferred to prepare their joint Rule 26(f) report.  *See* D. Conn. L. Civ. R. 26(f)(1) ("Within thirty days after the first appearance of a defendant, the attorneys of record and any self-represented parties who have appeared in the case

injunctive relief, TIAA asks the Court to enjoin the Defendants "from violating their non-solicitation, confidentiality, and non-disparagement obligations." Doc. 12, at 1.  In aid of that motion, Plaintiff seeks expedited discovery of "factual information relevant to core claims in the case that will support the efficient development of the evidentiary record and support the Court's adjudication of a forthcoming motion for preliminary relief." Doc. 11, at 1.  The Court herein addresses Plaintiff's request for expedited discovery.

## II.  DISCUSSION

### A.  Standard for Expedited Discovery

In the context of "preliminary injunction hearings," Courts in this District follow the "ordinary practice" of "permit[ting]  limited and reciprocal expedited discovery regarding the issues that will arise at the preliminary injunction hearing."  *Sica v. Connecticut,* 331 F. Supp. 2d 82, 87 (D. Conn. 2004). *See also Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 456 (D. Conn. 2020) ("Before the [preliminary injunction] hearing, the parties shall participate in expedited discovery."); *Maxum Petroleum, Inc. v. Hiatt*, No. 3:16-CV-01615 (VLB), 2016 WL 5496283, at *1 (D. Conn. Sept. 28, 2016) (granting expedited discovery in connection with injunction proceedings).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Pursuant to Federal Rule of Evidence 401, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)-(b).

Plaintiff TIAA moves to obtain discovery of evidence relevant to a determination of its

shall confer for the purposes described in Fed. R. Civ. P. 26(f).").

4

contemporaneous motion for preliminary injunctive relief.  In addition to case law, Plaintiff bases

this motion on alleged contracts with Defendants which explicitly allow Plaintiff expedited discovery

to support a request for preliminary injunction.   Plaintiff asserts that upon commencing their

affiliation with TIAA, each Defendant entered into a "Confidentiality and Non-Solicitation

Agreement" (herein "Agreement"), which included provisions for both preliminary and permanent

injunctive relief, as well as expedited discovery in aid of a preliminary injunction motion in the event

Defendants breached the Agreement.

> Paragraph 7 of the Agreement, appended to TIAA's Complaint, thus states, in pertinent part:
>
> Employee's actual or threatened breach of this Agreement shall entitle the Company
> to temporary, emergency, *preliminary and permanent injunctive relief* to compel
> Employee's specific performance of Employee's obligations under this Agreement,
> it being agreed that any breach or threatened breach of this Agreement by Employee
> would cause immediate and irreparable injury to the Company that could not be
> adequately compensated by money damages. . . . The Company shall also be entitled
> to *expedited discovery* without the necessity that the Company first seek a court order
> authorizing such discovery, including depositions, in connection with any proceeding
> alleging breach or threatened breach of this Agreement . . . .

Doc. 1-1 (Ex. A), at 7 (¶ 7) (emphasis added).   TIAA concludes that under this Agreement, all parties

at least contemplated the imposition of injunctive relief in the event of Defendants' breach of the

Agreement.  Moreover, pursuant to the Agreement, Plaintiff was explicitly entitled to expedited

discovery upon breach of the Agreement.

**B.  Purpose of Requested Expedited Discovery**

In the case at bar, Plaintiff argues that the expedited discovery of documents and deposition

testimony regarding Defendants' communications with clients would be relevant to the Court's

resolution of Plaintiff's contemporaneously-filed motion for preliminary injunction.  According to

TIAA, such discovery would reveal that "Defendants solicited clients in violation of their notice and

5

non-solicitation agreements with TIAA, as well as their common law obligations to TIAA." Doc. 11-1, at 3. TIAA has alleged that "Defendants were speaking with clients about their move prior to, during, and after their notice periods." *Id.* In addition, "Defendants refused to identify the clients they spoke with about their move during their notice periods and have otherwise failed to provide adequate assurances that they will abide by their express non-solicitation agreements." *Id.*

TIAA further argues that the intended discovery would be "limited in scope" and "any burden on Defendants [would be] minimal." *Id.* "The communications are readily obtainable and the depositions TIAA seeks will last less that two days in total." *Id.* Also, once clients have "moved their business to Defendants' new firm," TIAA does not seek discovery regarding Defendants' communications with such clients. *Id.*

In addition, because Defendants agreed not to "remove any [TIAA] property, . . . including, but not limited to, Confidential Information, from TIAA's premises" and to "promptly surrender" such information to TIAA "upon [their] Termination Date," Doc. 1-1, at 6-7 (¶ 4), Defendants' use, retention, and/or disclosure of confidential information is relevant to preliminary injunction, including irreparable harm. TIAA claims that it will seek limited discovery in this area with a *de minimis* burden on Defendants. Doc. 11-1, at 4. Moreover, the probative value of such testimony and documents would allegedly "far outweigh[ ]" any such burden. *Id.*

Finally, TIAA seeks discovery to ascertain the terms of Defendants' affiliations with the Goss Advisors. *Id.* Such discovery will allegedly "reveal . . . the compensation [Defendants] will receive in the future," which will assist the Court in balancing the equities regarding injunctive relief. *Id.* Moreover, discovery regarding "any financial incentives linked to diverting clients" will allegedly be probative on the issue of balancing the equities. *Id.* Similarly, evidence regarding the Defendants'

6

communications with the Goss Advisors regarding Defendants' transitions may indicate whether they contracted with Goss to move a certain level of assets, which in turn may show that Defendants intended to solicit clients and/or to breach their obligations of confidentiality. *Id.* at 5.

## III. CONCLUSION

At this early stage of the proceedings, counsel for the three Defendants in this action filed Notices of Appearance on October 25, 2021. Doc. 13 & 14. No answer to the Complaint has been filed yet, nor have responses to Plaintiff's motions been submitted.

Plaintiff's motion for a preliminary injunction, governed by Federal Rule 65 of Civil Procedure, sounds in equity and will be given priority by the Court. It would appear, from Plaintiff's submissions, that Plaintiff's entitlement to preliminary injunctive relief depends upon the resolution of disputed facts which will require an evidentiary hearing, in aid of which Plaintiff prays for expedited discovery.

Expedited discovery is common in cases of this nature. Accordingly, Plaintiff's "Motion for Expedited Discovery" [Doc. 11] will be granted, unless, not later than **November 9, 2021**, Defendants file opposition papers which persuade the Court that expedited discovery should not be allowed in this case. Absent such a ruling, counsel for the parties are directed to confer in a good faith effort to agree upon a schedule for expedited discovery, which when completed will be followed by an evidentiary hearing before the Court on Plaintiff's motion for a preliminary injunction. If the case proceeds in that fashion, counsel are directed to advise my Chambers not later than **November 12, 2021**, with respect to the status of the case. If the parties cannot agree on a

7

schedule for expedited discovery, the Court will set one.

It is SO ORDERED.

Dated:   New Haven, Connecticut
          November 2, 2021


*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge